## CUSTODY OF A MINOR (No. 2).

Suffolk.   May 9, 1979. — August 8, 1979.

Present: HENNESSEY, C.J., BRAUCHER, WILKINS, LIACOS, & ABRAMS, JJ.

*Parent and Child*, Care and protection of minor. *Due Process of Law*, Care and protection of minor, Vagueness of statute. *Evidence*, Hospital records, Expert opinion.

General Laws c. 119, §§ 24, 26, permitting the commitment of a minor child found to be in need of care and protection to the custody of the Department of Public Welfare, are not unconstitutionally vague. [716-719]

A finding of parental unfitness and subsequent transfer of child custody to the Department of Public Welfare pursuant to G. L. c. 119, § 26, need not be based on evidence of existing neglect or mistreatment and the judge in such a proceeding may consider the likelihood of future harm. [719-720]

In a proceeding under G. L. c. 119, § 24, it is not constitutionally required that a decision to transfer custody of a minor child to the Department of Public Welfare be based on clear and convincing evidence that the transfer is in the child's best interest or that such transfer constitutes the least restrictive means available to the court. [720-722]

This court remanded a proceeding under G. L. c. 119, § 24, for further consideration where the judge's findings in support of his decision to transfer custody of a child to the Department of Public Welfare were insufficiently specific to meet the requirements set forth in *Custody of a Minor (No. 1)*, 377 Mass. 876 (1979). [722]

CIVIL ACTION commenced in the Boston Juvenile Court on April 28, 1978.

Upon appeal the case was heard by *Ireland*, J.

The Supreme Judicial Court granted a request for direct appellate review.

*Jinanne S. J. Elder* for the defendant.

*Diane T. Lund* for the minor child.

*Nancy R. Rice* for Beth Israel Hospital Association.

*E. Michael Sloman*, Assistant Attorney General, for the Department of Public Welfare.

*Martin Guggenheim, Lydia Tugendrajch & Marcia Robinson Lowry*, for the American Civil Liberties Union Foundation, Children's Rights Project, & *John Reinstein*, for Civil Liberties Union of Massachusetts, amici curiae, submitted a brief.

HENNESSEY, C.J. On April 28, 1978, Judith Arons, a psychiatric social worker employed at Beth Israel Hospital, petitioned the Boston Juvenile Court for a determination that the appellant mother's newly-born child was in need of care and protection. See G. L. c. 119, § 24. An order transferring temporary custody of the child to the Department of Public Welfare was entered, and the matter was continued until July 19, 1978, for a hearing. At that hearing, the judge granted Arons's petition and transferred permanent custody of the child to the department. See G. L. c. 119, § 26. The mother exercised her right to trial de novo, see G. L. c. 119, § 27; *Robinson* v. *Commonwealth*, 242 Mass. 401 (1922), after which trial the custody transfer was affirmed. The case comes before us on the mother's application for direct appellate review.

The mother presses the following arguments as grounds for reversal: (1) the applicable statutes, G. L.

c. 119, §§ 24, 26, are unconstitutionally vague on their face; (2) the judge exceeded the scope of his statutory and constitutional authority by transferring custody of the child as a preventive, rather than remedial, measure; (3) the judge failed to require "clear and convincing" evidence and a demonstration of "least restrictive means" in determining the necessity of awarding custody to the department; and (4) the judge erred in admitting certain documents and testimony in evidence at the hearing below.

We reject all of the mother's contentions. The statutes are not unconstitutionally vague on their face; rather, they constitute an appropriate legislative response to the problem of child neglect and maltreatment. Neither do we perceive any infirmity in the admission of the challenged evidence at the proceeding below. The remaining two issues, i.e., the standard of proof applicable to care and protection proceedings and the circumstances in which a child may be removed from the custody of its natural parent, we considered at length in a recent decision. See *Custody of a Minor (No. 1)*, 377 Mass. 876 (1979). In that case we held that courts need not wait until they are presented with an already maltreated child before they decide the necessity of care and protection. Rather, the State's interest in protecting children from suffering harm at the hands of their parents may properly be preventive as well as remedial. *Id.* at 882-883. We also rejected the premise that custody of a child may be transferred to the State only upon a showing of "clear and convincing" evidence. Instead, we chose to require that trial judges make specific and particularized findings of fact, which set out the justification for any judicial action taken. *Id.* at 884-885. We continue to adhere to those holdings and have reviewed the record currently before us accordingly. Nevertheless, we conclude that it is necessary to reverse and remand this case for further findings, because the findings as they now stand are insufficiently specific to satisfy the mandate of that earlier decision.[1]

---

[1] We intend no criticism of the judge's manner of handling the matter below. The trial was conducted months before the publication

We summarize the facts briefly as follows. The appellant mother is a twenty-nine year old single woman with a substantial history of mental disorders. On September 28, 1977, she underwent a pregnancy test at Beth Israel Hospital, the results of which proved to be positive. On October 17 and 18, 1977, she returned to the hospital for the purpose of seeking counseling and services. Both she and her mother were seen on those dates by Judith Arons, the petitioner in this action. Arons testified that the appellant ultimately chose not to procure an abortion despite her mother's vehement objection. Arons further testified that she offered to devise a program of prenatal care and counseling for the appellant, which offers the appellant rejected. Concerned for the mother's well-being, as well as for the well-being of the child, Arons maintained contact with the appellant's family in an effort to ensure the availability of medical and psychiatric assistance, in the event that it was requested or needed.

On April 27, 1978, the appellant gave birth to the child subject of this action, unassisted and in her own home. She then walked to a nearby public telephone and called her mother, who arranged for an ambulance to be sent. Both mother and child were admitted to Beth Israel Hospital shortly thereafter. The child was found to be in good health, as was the mother, except for some minor vaginal lacerations which she refused to have stitched. The mother was also seen at that time by a psychiatrist who diagnosed her as suffering from chronic paranoid schizophrenia.

---

date of *Custody of a Minor (No. 1)*, 377 Mass. 876 (1979), and the judge had no reason to anticipate our holding in that decision. Neither do we express any view as to whether the evidence in the record is sufficient to sustain removing custody of the child in this action from its natural mother. We think that the task of weighing the evidence is best left to the trial judge who had the opportunity to evaluate the evidence firsthand.

On May 1, 1978, the appellant was discharged from Beth Israel Hospital and admitted, on a voluntary basis, to the mental health unit of Newton-Wellesley Hospital. She remained in that unit until June 12, 1978. From June 13 until August 11, 1978, the mother was treated, again voluntarily, at Newton-Wellesley Day Hospital on an outpatient basis. Her treatment both at the unit and at the day hospital consisted of psychotherapy and antipsychotic medication. On August 7, 1978, the mother began working at a bookbinding company in Boston and continued to be so employed at the time of trial. Shortly after obtaining her job, she discontinued her psychotherapy sessions and stopped taking the medication.

1. We turn first to the contention that G. L. c. 119, §§ 24, 26, are unconstitutionally vague on their face. The appellant maintains that the statutory scheme provides parents with no meaningful standards to guide their conduct, courts with no meaningful standards to guide their decisions, and inhibits the exercise of fundamentally protected freedoms. It is not argued that the State lacks a compelling interest in protecting children from harm, once the need for such protection has properly been demonstrated. Rather, it is the gravamen of the appellant's position that the statutes authorize such intervention without such a proper showing. It is this characteristic, she contends, that "fatally flaws" the statutory scheme.

We begin by pointing out that the concept of "vagueness" is invoked primarily to invalidate criminal statutes. Vague criminal laws threaten and offend several fundamental values. As the Supreme Court has so poignantly stated: "First, because we assume that man is free to steer between lawful and unlawful conduct, we insist that laws give the person of ordinary intelligence a reasonable opportunity to know what is prohibited, so that he may act accordingly. Vague laws may trap the innocent by not providing fair warning. Second, if arbitrary and discriminatory enforcement is to be prevented, laws must provide explicit standards for those who apply

them. A vague law impermissibly delegates basic policy matters to policemen, judges, and juries for resolution on an *ad hoc* and subjective basis, with the attendant dangers of arbitrary and discriminatory application. Third, but related, where a vague statute 'abut[s] upon sensitive areas of basic First Amendment freedoms,' it 'operates to inhibit the exercise of [those] freedoms.' Uncertain meanings inevitably lead citizens to 'steer far wider of the unlawful zone' . . . than if the boundaries of the forbidden areas were clearly marked" (citations omitted). *Grayned* v. *Rockford*, 408 U.S. 104, 108-109 (1972). See *McQuade* v. *New York Cent. R.R.*, 320 Mass. 35, 40 (1946); *Commonwealth* v. *Reilly*, 248 Mass. 1 (1924); *Commonwealth* v. *Pentz*, 247 Mass. 500 (1924).

It is now settled that the mere fact that statutory provisions are "civil" and not "criminal" does not save them from scrutiny under the vagueness doctrine; rather, it is the nature of the individual interest involved that governs the right to due process. See, e.g., *Giaccio* v. *Pennsylvania*, 382 U.S. 399, 402 (1966). Yet the distinction is not without relevance. Even in the criminal context, where the consequences are generally more severe, statutes do not contravene constitutional requirements simply because they include general terms. See, e.g., *Jaquith* v. *Commonwealth*, 331 Mass. 439, 442 (1954). If the challenged language, when viewed in light of common practice and understanding, definitively describes conduct that is proscribed, it is constitutionally adequate. *Commonwealth* v. *Jarrett*, 359 Mass. 491, 496-497 (1971). Moreover, statutory language may acquire definite meaning when studied in light of common law interpretation or against the background of its statutory history. *Commonwealth* v. *Balthazar*, 366 Mass. 298, 300 (1974). *Commonwealth* v. *Brasher*, 359 Mass. 550, 553 (1971). While we recognize that the "civil/criminal" distinction is not dispositive, we think it axiomatic that the Legislature must be given some greater leeway when drafting statutes of the type involved here. Such statutes are de-

signed to accommodate not only the competing and, perhaps, antithetical interests of the individual and the State, but also the interests of a third party, here, the individual's child. With these general principles in mind, we now turn to the applicable statutes.

General Laws c. 119, § 24, as amended through St. 1975, c. 276, § 3, provides that any person concerned for a child's welfare may file a petition alleging that the child "is without necessary and proper physical, educational or moral care and discipline, or is growing up under conditions or circumstances damaging to a child's sound character development, or who lacks proper attention of parent, guardian with care and custody, or custodian, and whose parents or guardian are unwilling, incompetent or unavailable to provide such care." If the court finds that the allegations have been proved and that the child is therefore in need of "care and protection," it may enter any order conducive to the child's best interests, including but not limited to permanently committing the child to the Department of Public Welfare. G. L. c. 119, § 26.[2]

Although there may have existed some uncertainty at one time as to what kinds of evidence would justify removing custody of a child from its natural parent, "it is now clear that the Commonwealth may not attempt to force the breakup of a natural family without an affirmative showing of parental unfitness." *Custody of a Minor (No. 1)*, 377 Mass. 876, 882 (1979). A child's interests are presumed to be best served in the stable and continuous environment of its own family. See G. L. c. 119, § 1; *Stanley* v. *Illinois*, 405 U.S. 645, 651 (1972). Accordingly, State intervention is justified only when parents are shown to be incapable of fulfilling their duties as parents. This does

---

[2] Despite the characterization of the most severe custody transfers as "permanent," parents, among others, retain the right to petition the court every six months for a review and redetermination of the current needs of the child. G. L. c. 119, § 26.

not mean that the State is free to intrude upon families simply because their households fail to meet the ideals approved by the community. Neither does it authorize State intervention simply because the parents embrace ideologies or pursue life-styles at odds with the average. Rather, it is incumbent upon the State to prove that the parents suffer from "grievous shortcomings or handicaps that would put the child's welfare in the family milieu much at hazard." *Petition of the Dep't of Pub. Welfare to Dispense with Consent to Adoption,* 376 Mass. 252 (1978), quoting from *Petition of the New England Home for Little Wanderers to Dispense with Consent to Adoption,* 367 Mass. 631, 646 (1975).

We do not think such language is vague. Indeed, to require the Legislature to anticipate and codify every parental shortcoming or handicap that might place an exposed child in danger would be to require the impossible. Courts must be allowed some flexibility in the area if they are to respond at all fairly or intelligently to the factual situations that come before them. Any greater specificity than that which has already been expressed would render impotent the Legislature's attempt to prevent child neglect and maltreatment. We decline so to tie the hands of the State, and we hold that the statutes are not unconstitutionally vague.

2. We turn next to the appellant's contention that the judge's rulings lacked evidentiary support as a matter of law. The gist of the appellant's argument is that a finding of parental unfitness and subsequent transfer of child custody to the department must be based on evidence of existing neglect or mistreatment and not merely on the fear, however well-founded, that a firstborn child would suffer harm. Although we agree that there must be a finding of a current parental unfitness before the State may assume custody of a child, see *Custody of a Minor (No. 1), supra* at 880, we decline to restrict the evidence in the manner that the appellant suggests.

As noted earlier, we considered this issue in a recent decision, see *Custody of a Minor (No. 1), supra,* and rejected the argument now advanced: "Notwithstanding [the] measure of deference that must be accorded parental and family rights, the State interest in protecting neglected children may properly be preventive as well as remedial. . . . The court need not wait until it is presented with the maltreated child before it decides the necessity of 'care and protection' " (citations omitted). *Id.* at 882-883. The appellant correctly points out that the court in that case was presented with prognostic evidence derived from a history of parental neglect as to other children, and that there is no such history in evidence here. However, the general principles articulated in that opinion apply equally to the facts now before us.

We offer no opinion as to whether, on remand, the judge's elaborated findings, see part 3 *infra,* will support a conclusion that this mother is unfit. We simply hold that judges may act to prevent harm from coming to newborns, if admissible evidence of whatever kind indicates that such harm will occur.

3. The appellant next contends that the judge below erred in choosing the applicable standard of proof. More specifically, it is argued that the Constitution requires "clear and convincing" evidence that removing a child from its natural parent is in the child's best interests and that such removal constitutes the "least restrictive means" available to the court. We have rejected these arguments in recent decisions, see *Custody of a Minor (No. 1),* 377 Mass. 876 (1979), *Petition of the Dep't of Pub. Welfare to Dispense with Consent to Adoption, supra,* and we reject the arguments again here. We are mindful of the legislative policy articulated in G. L. c. 119, § 1,[3] and

---

[3] General Laws c. 119, § 1, as appearing in St. 1954, c. 646, § 1, provides in part: "It is hereby declared to be the policy of this commonwealth to direct its efforts, first, to the strengthening and encouragement of family life for the protection and care of children; to assist and encourage the use by any family of all available resources to this end;

we agree that custody of a child may be transferred from
its parent to the State only after the most careful judicial
consideration. However, we have stated our conviction
that the necessary added degree of protection would be
best accomplished by requiring judges to "enter specific
and detailed findings demonstrating that close attention
has been given the evidence and that the necessity of
removing the child from his or her parents has been per-
suasively shown." *Custody of a Minor (No. 1), supra* at
886. We have not since faltered in that conviction.

The appellant argues that we reconsider our position in
light of a recent Supreme Court decision. In *Addington* v.
*Texas*, 441 U.S. 418 (1979), the Supreme Court held that,
in involuntary civil commitment proceedings, the Four-
teenth Amendment requires proof by "clear and convinc-
ing" evidence that the individual sought to be committed
is dangerous either to himself or to others. We point out
that, well before *Addington*, this court required proof
beyond a reasonable doubt in such proceedings, see *Su-
perintendent of Worcester State Hosp.* v. *Hagberg*, 374
Mass. 271 (1978), and we considered that requirement
when deciding *Custody of a Minor (No. 1), supra.*

It is our view that neither *Hagberg* nor *Addington* con-
trols in care and protection proceedings. Involuntary
commitments entail deprivations of liberty of a character
different from those involved here. Moreover, the compel-
ling interests at stake are distinguishable. In *Hagberg*
and *Addington*, a single individual's interests were pitted
directly against those of the State. In custody proceed-
ings, there exists a third interest — that of the child,
whose welfare might significantly be jeopardized by re-
quiring a more onerous burden of proof. We do not think
that the Constitution mandates burdening the State with

and to provide substitute care of children only when the family itself
or the resources available to the family are unable to provide the
necessary care and protection to insure the rights of any child to sound
health and normal physical, mental, spiritual and moral develop-
ment."

a standard of proof that may render meaningless its efforts to curtail child neglect and maltreatment. Accordingly, we hold that neither "clear and convincing" evidence nor a showing of "least restrictive means" is required.

Notwithstanding our refusal to accept the appellant's contentions, we conclude that it is necessary to reverse and remand the case to the court below. The judge's findings as they stand do not meet the level of specificity required by *Custody of a Minor (No. 1), supra.* At the close of the trial, the judge found that the mother suffered from serious psychological problems, including "thought confusion, disorganization, inability to express emotional reactions and poor judgment." The judge further found that, according to the documentary and testimonial evidence offered by the Newton-Wellesley Hospital medical staff, the "mother is unable to use sound judgment in caring for herself, and . . . would equally be unable to use sound judgment in caring for her son." From this the judge concluded that, "[A]lthough [the] mother loves her child very much, she is unable to . . . assume parental responsibility; . . . she is now, and will be for some time to come, unable to provide the attention, supervision, and guidance that the child needs; [and] . . . it will take many years, assuming continual improvement and continued monitoring and support, before [the] mother could properly care for the child."

It is not enough to state that the appellant suffers from a mental disorder. Rather, it is necessary to detail the specific symptoms or delusions precipitated by this disorder that render the parent unfit. Language such as that used by the judge in his findings is conclusory and merely tracks that of the statute. The crucial questions are: From what shortcomings or handicaps does the parent suffer that would endanger the well-being of this child if exposed, and has the necessity of permanently removing the child from its parent persuasively been shown? We ask that the judge attempt to answer these questions in his new findings of fact on remand.

4. Finally, we consider the evidentiary objections raised by the appellant in this appeal. They are that certain portions of her medical records, certain opinion testimony offered by Judith Arons, and certain parts of the court-appointed investigator's reports should have been excluded as incompetent and/or hearsay. We see no merit in the appellant's contentions.

The hospital records were admissible under *Bouchie* v. *Murray*, 376 Mass. 524 (1978). Arons's testimony was admissible as expert testimony and does not appear to have exceeded the province of her expertise. See, e.g., *Commonwealth* v. *Boyd*, 367 Mass. 169, 182 (1975). Finally, the investigator's reports were admissible under G. L. c. 119, § 21. We conclude that there was no error.

5. For reasons stated in part 3 *supra*, we reverse and remand this case to the Appellate Division of the Boston Juvenile Court for further proceedings in accordance with this opinion.

*So ordered.*