CARE AND PROTECTION OF IAN & another.[1]

No. 97-P-1987.

Middlesex. August 4, 1998. - April 7, 1999.

Present: WARNER, C.J., PERRETTA, & RAPOZA, JJ.

*Parent and Child,* Care and protection of minor. *Minor,* Care and protection. *Evidence,* Child custody proceeding, Presumptions and burden of proof.

In a care and protection proceeding, the judge's findings did not support his conclusion that the mother was currently unfit, and, in any event, where the findings were made with respect to circumstances obtaining in 1991-1995, they were stale; the matter was remanded for further proceedings and the taking of new evidence. [617-619]

In a care and protection proceeding, the judge incorrectly placed the burden of proof on the issue of parental fitness on the mother [619], and his order that visitation occur only if "therapeutically appropriate" applied an incorrect legal standard [619-620].

PETITION filed in the Lowell Division of the District Court Department on April 13, 1993.

The case was heard by *Neil J. Walker,* J.

*Michael F. Kilkelly* for the mother.

*Beverly Coles-Roby,* Assistant Attorney General, for Department of Social Services.

RAPOZA, J. The mother of two minor children has appealed from an order of the District Court adjudicating both children to be in need of care and protection and awarding temporary legal custody of them to the Department of Social Services (department) pursuant to G. L. c. 119, § 26. The children are placed in separate foster homes. The mother contends that the judge's findings in support of the order do not clearly and convincingly show her to be currently unfit as a parent.[2] She also claims that the judge impermissibly shifted the burden of proof from the

---

[1]Ian's younger brother, Bradford. We refer to both children by pseudonyms.

[2]The putative fathers of the two children did not take part in the proceedings below and have not appealed.

petitioner (the department) to her on the issue of parental fitness by stating in the order that she "has not clearly and convincingly [been] shown to have . . . present ability, capacity or readiness to parent her minor children." Finally, she asserts that, by ordering at least monthly visits between her and the children, but only upon the condition that the visits are "therapeutically appropriate," the judge applied a faulty legal standard. In effect, the mother claims, he impaired her right to have visits with her children by failing specifically to determine that visits would be harmful to the children or the public welfare or would not be in the children's best interests.

We agree with each one of these contentions and so vacate the November 21, 1995, order. The matter is remanded to the District Court for further proceedings at which new or additional evidence relevant to the issue of the mother's *current* fitness must be taken and new or additional findings made on that issue. In addition, regular visitation between the mother and the children must be provided unless the District Court shall first determine that visits would be harmful to either or both of the children.

1. *Parental fitness.* "The judge's findings in a custody proceeding must be specific and detailed so as to demonstrate that close attention has been given the evidence and such findings must prove current parental unfitness clearly and convincingly." *Custody of Eleanor*, 414 Mass. 795, 799 (1993), and cases cited. "The requisite proof must be strong and positive; it must be full, clear and decisive." *Adoption of Iris*, 43 Mass. App. Ct. 95, 105 (1997), *S.C.*, 427 Mass. 582 (1998), quoting from *Callahan* v. *Westinghouse Bdcst. Co.*, 372 Mass. 582, 584 (1977). Throughout the adjudicatory stage of a care and protection proceeding, as in an adoption proceeding, the burden of proving current parental unfitness remains squarely upon the petitioner. *Adoption of Iris, supra* at 105.

The department presented its case on the mother's fitness entirely from documentary evidence which the judge accepted without objection by the mother. The trial transcript (only thirty-two pages in length), consists exclusively of testimony from witnesses called by the mother, including two parenting counselors (who spoke positively of the mother's involvement with them), two of the mother's sisters, and the mother herself. Not surprisingly, the transcript provides little or no evidence of current unfitness. The judge's findings on that question,

therefore, depend more or less exclusively upon the documentary evidence offered by the department.[3] See *Adoption of Inez,* 428 Mass. 717, 721 (1999).

The findings draw from that evidence and tell in detail about both children's severe emotional and psychological problems. Those include aggressive behavior, sexual acting out, and suicidal ideation on Ian's part. Ian has recently been diagnosed with attention deficit hyperactivity disorder (ADHD) and oppositional defiant disorder. He has been briefly hospitalized twice for psychiatric reasons. His younger brother, Bradford, presents somewhat similar behavioral problems: he is aggressive, has severe tantrums, and occasionally sleepwalks. The judge concluded that the children, together, require "extraordinary parenting ability to overcome [their] past traumas and . . . present problems" which the mother "is not presently able to provide . . . ."

The findings, however, fail to describe in even the barest detail the past traumas to which the mother supposedly subjected the children or the specific acts or omissions by her that likely contributed to their present problems. To be sure, the findings tell us that, while under the mother's care prior to being placed in foster care in April, 1993, the children were "neglected" or "abused" (we are not told by whom) and that the mother now denies the severity of those, and other, unspecified problems in the home. But we are left to guess about what those problems were exactly, and about what many of the particulars were that led to the children's removal from her care in 1993. We are also left to guess what were the mother's specific, identified deficiencies or weaknesses as a parent — be they alcohol or drug abuse, violent conduct, emotional problems, or some other reason for concern — which the department's many service plans with her were supposed to help correct.[4] The findings reveal little about the mother's level of participation (or nonparticipation) in

---

[3]All documentary exhibits, except for the court investigator's original and updated reports, are reprinted in the petitioner's record appendix. The court investigator reports are conspicuously missing, however.

[4]For example, the judge's findings recite that the mother "is a person of limited cognitive abilities," but no attempt is made to link that particular deficiency to inadequate parenting on her part. It is not enough to state that a parent has a particular condition without detailing the ways in which that condition renders the parent unfit. *Custody of a Minor (No. 2),* 378 Mass. 712, 722 (1979).

services recommended to her by the department between 1993 and 1995, and whether she has made any genuine gains as a parent from such participation. In fact, the findings suggest that, when the trial took place in March, 1995, the mother was participating both in individual and group counseling and in parent aide services and, as a result, was making personal headway.

Taken as a whole, the findings regarding the mother's over-all capability as a parent at the time of trial (as opposed to the findings regarding the children's particular problems and their special needs) lack the sort of specificity and detail that is required in these cases. See and compare *Custody of a Minor (No. 2)*, 378 Mass. 712, 721-722 (1979), citing and discussing *Custody of a Minor (No. 1)*, 377 Mass 876, 886 (1979). Certainly, the findings do not demonstrate the mother's current unfitness in a "full, clear and decisive" manner. *Adoption of Iris*, 43 Mass. App. Ct. at 105. Additionally, the findings which were culled from evidence of events between 1991, when the family first became involved with the department, and 1995 have become stale with the passage of time. See *Adoption of Jenna*, 33 Mass. App. Ct. 739, 744 (1992) ("[S]tale information cannot be the basis of current unfitness [but] prior parental conduct is . . . relevant in assessing . . . capacity and ability to care for the child").

Since the 1995 order of adjudication and commitment, the matter has been continued several times. The children remain in placement apart from one another in separate foster homes. The situation with respect to visitation of the children with each other and with the mother is not clear. The department's counsel stated at oral argument that the department has no immediate plan to amend the care and protection petition to seek termination of parental rights under G. L. c. 210, § 3. According to the department, the current "plan" for both children (who are now twelve and nine) is "long term substitute care" — which we take to mean indefinite placement of them in foster care. What, if any, active efforts are currently being made by the department to reunite them with the mother also is unclear.

All of this — the failure of the findings to demonstrate unfit-ness as of 1995 and the current staleness of those findings — requires us to remand the matter for further proceedings during the pendency of which the present custody arrangements are to be maintained. See and compare with the remand conditions

discussed in *Care and Protection of Inga*, 36 Mass. App. Ct. 660, 668 (1994), and *Adoption of Iris*, 43 Mass. App. Ct. at 106. It may well be that the evidence originally produced by the department is sufficient to yield detailed and specific findings describing a past pattern of neglect or abuse by the mother that would be relevant to determining present unfitness. See *Adoption of Mario*, 43 Mass. App. Ct. 767, 772-773 (1997). In any event, additional new evidence must be taken that is relevant to the issue of the mother's *current* abilities and fitness to care for these children.

2. *Burden of proof on the issue of fitness.* The burden of proof on this issue rests entirely with the petitioner, not with the respondent mother. *Adoption of Iris*, *supra* at 105. See *Petition of the Dept. of Social Servs. to Dispense with Consent to Adoption*, 397 Mass. 659, 664 (1986). The mother may, as of right, offer evidence of her fitness as a parent in order to rebut that of unfitness which has been offered by the department. See *Duro v. Duro*, 392 Mass. 574, 580 (1984) (fundamental fairness and due process concerns require opportunity for parent in child custody proceedings to rebut adverse allegations concerning his or her child-rearing capabilities). Nowhere, however, do the cases even remotely suggest that the burden of persuasion on the crucial question of parental fitness is somehow to be shifted onto the parent at any point during adjudicatory proceedings conducted on a care and protection petition under G. L. c. 119, § 26. The November 21, 1995, order is in error to the extent that it casts upon the mother the burden of showing that she possesses the present ability, capacity or readiness to parent the two children.[5]

3. *Visitation order.* The decision and order includes no subsidiary findings of fact regarding the mother's visits with the children other than one finding that Ian's visits with her "create a great deal of turmoil for [him]." No findings appear as to how Ian's brother, Bradford, has reacted to visits or, for that matter, whether the mother has consistently visited with him or Ian. Nonetheless, the judge concluded in a separate finding that "visitation between [the children] and their mother should only occur if it is determined to be therapeutically appropriate for the

---

[5]The judge could, of course, simply conclude based upon clear and convincing evidence and specific, detailed subsidiary findings of fact that he has made upon that evidence that the mother lacks present ability or capacity to care for the children.

children." He ordered the department and mother to implement a service plan "that allows visits when therapeutically appropriate and no less than once a month with each child." The mother now contends that the visitation order employs an improper legal standard. We agree.

Before visitation rights may be terminated, the trial judge "must make specific findings demonstrating that parental visits will harm the child . . . ." *Custody of a Minor (No. 2)*, 392 Mass. 719, 726 (1984). The same standard of clear and convincing evidence controls the decision to terminate a parent's visitation rights as it does the decisions concerning parental unfitness in both care and protection and adoption proceedings. *Custody of a Minor (No. 2)*, 22 Mass. App. Ct. 91, 93 (1986).

The order in question does not purport to terminate the mother's visitation rights with either child; but the wording that allows visits only "when therapeutically appropriate" conceivably could accomplish that result even though no clear and convincing determination has been made that visits would be harmful to either or both of the children.[6] That same wording could also be construed as placing upon the mother the burden of showing that visits are "therapeutically appropriate," rather than placing upon the department the burden of showing that visits are therapeutically "inappropriate" and, hence, harmful to the child.

The phrasing used in the finding and the order creates other problems of interpretation as well. Who is the ultimate arbiter of whether visits are "therapeutically appropriate"? The children's therapist? The department? Or the District Court judge? The order does not specify with whom that responsibility lies. If, for example, the department, upon input from the therapists or the children's foster parents, should determine unilaterally that visits are *not* therapeutically appropriate for the children, then the order conceivably enables the department, on its own, to disallow visitation. That is not an acceptable solution. Finally, we think the term "therapeutically appropriate" is amorphous and not susceptible to any kind of fixed meaning in this context. The governing criterion is "harm to the child" as used in the cases. The judge must address the issue of visitation under that standard.

---

[6]The single finding that visits "create a great deal of turmoil for [Ian]" simply does not meet the heightened standard set forth in *Custody of a Minor (No. 2)*, 22 Mass. App. Ct. at 93-94, for terminating visits. No finding appears regarding *any* harm to Bradford from visits with the mother.

4. *Conclusion.* The order of November 21, 1995, is vacated and the case is remanded for further proceedings forthwith consistent with this opinion. Pending such further proceedings the present visitation and custody arrangements are to be maintained.

*So ordered.*