Troy, Paul E., J.
INTRODUCTION
Pursuant to G.L.c. 30A, §14, the plaintiff, Massachusetts General Hospital (“MGH”), seeks judicial review of a June 22, 2004 final decision of the defendant Division of Medical Assistance (“the Division”) denying payment to MGH for the inpatient treatment of a MassHealth member, herein referred to as “MM.” In its complaint, MGH also seeks a declaratory judgment that the Division’s Prepayment Review Program, as administered, is void for vagueness. For the reasons discussed below, MGH’s motion for judgment on the pleadings is DENIED.
ADMINISTRATIVE RECORD
The following facts are contained in the administrative record. MM, a 23-year-old female, presented at the MGH emergency room on July 5, 2000 with a right submandibular abscess secondary to an infected tooth, with increased swelling, trismus[1] and an inability to handle secretions. MM was having trouble breathing and swallowing, her tongue was swollen, she had a temperature of 99.2, and her lab work showed that she had a white blood cell count of 13.1 with 10.7 neutrophils, and normal BUN, creatinine and electrolyte levels. MM was taken to the operating room, given general endotracheal anesthesia, and an extraction of tooth number 29 was performed with an extra-oral incision and drainage of the submandibular space. During surgery, no purulence was noted in the mandibular space and following incision and drainage, the space which had been indurate and firm became much softer. Following the operation, MM was given IV hydration and pain relief, tonsil tip suctioning, head elevation, and warm compresses to the side of the face. A CT scan of MM’s head and neck performed on July 5 revealed an “ [u]nremarkable head CT with no evidence of an intracranial infectious process.”
On July 6, 2000, after being transferred to the floor from the PACU, MM complained of difficulty swallowing and tenderness. MM was still having difficulty with hydration, was voiding in only small amounts, and complained of pain. She was admitted as an inpatient and remained on IV hydration with increased pain medications. On July 7, MM’s cultures came back negative and she remained afebrile. She was discharged with outpatient management.
MGH sought payment from the Division for its inpatient treatment of MM. The Massachusetts Peer Review Organization (“MassPRO”) administers the Division’s Pre-payment Review Program, and evaluates selected cases to determine whether inpatient services provided to a Medicaid patient were “medically necessary.” See Massachusetts Eye and Ear Infirmary v. Commissioner of the Div. of Medical Assistance, 428 Mass. 805, 810 (1999). Pursuant to regulations promulgated by the Division, a service is “medically necessary” if:
*713 (1) it is reasonably calculated to prevent, diagnose, prevent the worsening of, alleviate, correct, or cure conditions in the member that endanger life, cause suffering or pain, cause physical deformity or malfunction, threaten to cause or to aggravate a handicap, or result in illness or infirmity; and
(2) there is no other medical service or site of service, comparable in effect, available, and suitable for the member requesting the service, that is more conservative or less costly to the Division.
310 Code Mass. Regs. §450.204(A). When a case is chosen for review, MassPRO requests the case file and medical records for that patient. A registered nurse conducts the initial review of the patient’s medical records. If the nurse does not approve an inpatient admission, the case is reviewed by a MassPRO physician who is board certified in the relevant specialty of care. If the reviewing physician feels there is some question as to the admission, a proposed initial determination (“PID”) is sent to the provider, who has 15 days to submit further documentation to clarify the concern raised by the reviewing physician. A different MassPRO physician who is board certified in the relevant specialty of care then conducts a second review. If the second reviewing physician concludes that payment should be denied, an Initial Denial Notice is sent to the provider stating the reasons for denial. The provider then has 33 days to request reconsideration of the decision and to submit additional materials or argument. Upon a request for reconsideration, a third review is conducted by a different MassPRO physician with appropriate credentials, and the provider is given a final decision.
In a PID issued to MGH on September 15, 2000, the reviewing physician raised a question as to the necessity for inpatient care, stating that MM had undergone an uneventful surgery and was stable, and noting that IV fluids are usually administered in the OPD. In its September 29, 2000 response to the PID, MGH stated that inpatient care was in compliance with the Division’s regulations because the hospital was concerned with the possibility of a worsening infection based on MM’s increasing complaints of pain and swelling. On October 12, 2000, following review by a second MassPRO physician, the Division issued an Initial Denial Notice to MGH, stating that MM’s post-surgery condition was stable, she was afebrile and she could have been given IV fluids and antibiotics in an observation bed rather than being admitted to the hospital. By letter dated November 10, 2000, MGH requested reconsideration of the denial, providing no new information but stating that, “(t]he concern about continued pain and swelling at this site, you must recognize until clearly improving raises question of internal jugular veins involvement and a rapidly fatal course. [MM] was therefore not appropriate for the outpatient setting given her difficult post-operative recovery and obvious risk for further compromise." Following review by a third MassPRO physician, the Division notified MGH in a Final Denial Notice dated December 1, 2000 that it was denying payment at the inpatient rate, but that MGH could re-bill for the services provided to MM at the outpatient rate.
MGH appealed the decision and the Division held a final appeal hearing on November 26, 2002. Dr. Cyrus Hopkins, a board certified internist with a sub-specialty in infectious diseases, testified on behalf of MGH. Dr. Hopkins testified that the inpatient services rendered to MM complied with the Division’s regulations for inpatient medical treatment because MM had continued nutritional and hydration issues and was at risk for post-operative infection. Dr. Hopkins opined that inpatient treatment was appropriate, given the pain and swelling at MM’s jaw, which raised a question of internal jugular vein involvement, which could rapidly become fatal.
Dr. Jerome Siegel, a board certified internist whose practice focuses on occupational and rehabilitation medicine, testified for the Division. Dr. Siegel testified that MM underwent an uncomplicated tooth extraction and extra-oral incision, and the fact that she had increased pain and swelling following surgeiy was not unusual or alarming. Dr. Siegel noted that MM’s swelling on July 6 was moderate and had not increased, she was nontoxic and afebrile, and the CAT scan results did not raise any cause for concern. Dr. Siegel opined that on July 6, MM was stable and recovering properly, such that a concern for jugular vein infection was unwarranted. He also noted that the hospital’s concern did not appear to be urgent, since no further blood work was ordered at that point. Dr. Siegel opined that inpatient treatment of MM was not medically necessary.
In a Final Appeal Decision dated June 22,2004, the Hearing Officer found that the medical care provided by MGH to MM was medically appropriate. However, the Hearing Officer concluded that MGH had not met its burden of establishing by a preponderance of the evidence that MM required inpatient treatment rather than treatment in a less costly outpatient setting. Accordingly, the Division denied MGH’s appeal.
DISCUSSION
Judicial review of an agency decision is confined to the administrative record. G.L.c. 30A, §§14(4), 14(5) (2000); Cohen v. Board of Registration in Pharmacy, 350 Mass. 246, 253 (1966); City of Boston v. Outdoor Advertising Bd., 41 Mass.App.Ct. 775, 776 (1996). The party appealing an administrative decision bears the burden of demonstrating that the decision is invalid. Fisch v. Board of Registration in Medicine, 437 Mass. 128, 131 (2002); Bagley v. Contributory Retirement Appeal Bd., 397 Mass. 255, 258 (1986). In reviewing an agency decision, the court is required to give due weight to the agency’s experience, technical competence, specialized knowledge and statutorily conferred discretion. G.L.c. 30A, §14(7); Flint v. Commissioner of *714 Pub. Welfare, 412 Mass. 416, 420 (1992); Bartlett v. Contributory Retirement Appeal Bd., 6 Mass.App.Ct. 948, 949 (1978). A court may not displace an agency’s choice between two fairly conflicting views, even though the court justifiably would have made a different choice if faced with the same set of facts de novo. Goldberg v. Board of Health of Granby, 444 Mass. 627, 638 (2005); Fisch v. Board of Registration in Medicine, 437 Mass, at 138. The court may set aside an agency’s decision only if it is legally erroneous, procedurally defective, unsupported by substantial evidence, or arbitrary and capricious. Weinberg v. Board of Registration in Medicine, 443 Mass. 679, 685 (2005).
MGH contends that the Division’s June 22, 2004 decision is unsupported by substantial evidence. Substantial evidence is such evidence as a reasonable mind might accept as adequate to support a conclusion, taking into account whatever in the record detracts from its weight. G.L.c. 30A, §14(7); New Boston Garden Corp. v. Board of Assessors of Boston, 383 Mass. 456, 466 (1981); School Committee of Norton v. MCAD, 63 Mass.App.Ct. 839, 843 (2005); Silvia v. Securities Div., 61 Mass.App.Ct. 350,358 (2004). MGH argues that the Division’s denial of inpatient reimbursement was unsupported by substantial evidence because Dr. Hopkins’s testimony was entitled to more weight than that of Dr. Siegel, a paid MassPRO consultant without any expertise in the area of infectious diseases. However, in deciding whether an agency’s decision is supported by substantial evidence, it is not the court’s role to decide questions of credibility and weigh conflicting evidence; rather, the court must defer to the agency’s expertise in judging credibility and drawing inferences. Silvia v. Securities Div., 61 Mass.App.Ct. at 358. Although Dr. Hopkins arguably has superior credentials, MGH does not contend that Dr. Siegel, a board certified internist, was unqualified to render an opinion on whether MM’s care could have appropriately been rendered in a less costly outpatient setting. Accordingly, this Court must defer to the Division’s assessment of credibility of the expert witnesses.[2]
Further, there is no merit to MGH’s argument that the Division improperly considered MM’s post-admission clinical response in making its determination. See Massachusetts Eye and Ear Infirmary v. Commissioner of the Div. of Medical Assistance, 428 Mass. 805, 814 (1999) (invalidating prior version of regulations and criticizing Division for denying payment based on retrospective evaluation of what patient’s ailment typically requires and patient’s outcome, rather than focusing on physician-assessed risk to patient at time of admission). The Division’s current regulations specifically provide that “(r)eviewers consider the medical-record documentation of clinical information available to the admitting provider at the time the decision to admit was made. Reviewers do not deny admissions based on what happened to the member after the admission.” 130 Code Mass. Regs. §415.414(B)(1). The Hearing Officer’s decision clearly focuses on the fact that at the time MM was admitted as an inpatient, she was in stable condition, afebrile, and a CAT scan showed no signs of intracranial infection. Thus, the administrative record contains substantial evidence to support the Division’s conclusion that inpatient treatment of MM was not medically necessary under 130 Code Mass. Regs. §450.204(A). Accordingly, MGH cannot prevail on Count I of the complaint, which seeks to overturn the Division’s denial of payment for inpatient treatment pursuant to G.L.c. 30A, §14.
In Count II of the complaint, MGH seeks a declaration that the Division’s Prepayment Review Program, as administered, violates due process because it is too vague and contains insufficient guidelines as to when inpatient treatment is appropriate, thereby permitting the Division to deny claims arbitrarily. The courts must apply all rational presumptions in favor of the validity of an administrative regulation. Massachusetts Eye and Ekir Infirmary v. Commissioner of the Div. of Medical Assistance, 428 Mass, at 813; Thomas v. Commissioner of the Div. of Medical Assistance, 425 Mass. 738, 746 (1997). Nonetheless, a regulation is void for vagueness if it fails to give fair warning as to what the standards of decision-making will be, or if persons of common intelligence must necessarily guess at the regulation’s meaning and differ as to its application. Cherubino v. Board of Registration of Chiropractors, 403 Mass. 350, 356 (1988); Brookline v. Commissioner of DEQE, 387 Mass 372, 376-77 (1982). Vague laws violate due process because individuals subject to them do not receive fair notice of what conduct is proscribed, and because laws that do not limit the exercise of discretion of officials raise the possibility of arbitrary and discriminatory enforcement. Caswell v. Licensing Comm’n for Brockton, 387 Mass. 864, 873 (1983); Custody of a Minor(No. 2), 378 Mass. 712, 716 (1979).
In 1999, in the case of Massachusetts Eye and Ear Infirmary v. Commissioner of the Div. of Medical Assistance, the Supreme Judicial Court invalidated the prior version of the Division’s regulations as impermis-sibly vague and violative of the statutory scheme because they failed to adequately define the terms inpatient and outpatient, focused on the patient’s outcome rather than the physician-assessed risk at the time of admission, and denied all reimbursement to providers who were determined to have rendered inpatient care that was not medically necessary. Id., 428 Mass. at 813-15. The Supreme Judicial Court concluded:
The division may operate on a case-by-case basis to determine the appropriate level of care, defined in some meaningful way, and allow reimbursement at that level, provided there is adequate review of its decision. Or it may promulgate clear rules and deny all reimbursement to providers who seek reimbursement at levels not in compliance with those *715 rules. What It may not do is promulgate criteria that are essentially tautological or meaningless, review claims on a case-by-case basis, and deny all reimbursement to providers who have acted in good faith and guessed wrong.
Id. at 817. Following this decision, the Division rewrote its regulations to correct the deficiencies identified by the Supreme Judicial Court. The new regulations, which were in effect at the time of the Division’s decision to deny MGH’s claim, define inpatient services as “medical services provided to a member admitted to an acute inpatient hospital,” which in turn is defined as:
a facility that is licensed as a hospital by the Massachusetts Department of Public Health and that provides diagnosis and treatment for patients who have any of a variety of medical conditions requiring daily physician intervention as well as full-time availability of physician services; however, this does not include any facility that is licensed as a chronic disease and rehabilitation hospital, any hospital that is licensed primarily to provide mental health services, or any unit of a facility that is licensed as a nursing facilily, a chronic disease unit, or a rehabilitation unit.
130 Code Mass. Regs. §415.402. The regulations define “outpatient services” as “medical services provided to a member in an outpatient setting including but not limited to hospital outpatient departments, hospital-licensed health centers, physicians’ offices, nurse practitioners’ offices, freestanding ambulatoiy surgery centers, day treatment centers, or the member’s home.” 130 Code Mass. Regs. §415.402. In addition, “outpatient hospital services” are defined as “medical services provided to a member in a hospital outpatient department. Such services include, but are not limited to, emergency services, primary-care services, observation services,[3] ancillary services, day-surgeiy services, and recovery-room services.” 130 Code Mass. Regs. §415.402.
The new regulations list several factors that are relevant to the decision to provide services on an inpatient basis, including but not limited to the amount of time the member is expected to require inpatient services, the member’s medical history, the member’s current medical needs, the severity of the signs and symptoms exhibited by the member, the medical predictability of an adverse clinical event occurring with the member, the results of outpatient diagnostic studies, and the iypes of facilities available to inpatients and outpatients. 130 Code Mass. Regs. §415.414(C).
In addition, the Division has promulgated Acute Inpatient Hospital Admission Guidelines to help providers determine the medical necessity of an acute inpatient hospital admission. 130 Code Mass. Regs. §415.414(C)(7). These guidelines describe thirteen different scenarios in which an inpatient admission generally would not be medically necessary. However, the guidelines state, “This is not an all-inclusive list. The Division or its agent may also determine that other admissions not characterized in this list are medically unnecessary and nonreimbursable on an inpatient basis.”
Finally, the new regulations provide that if the Division denies payment for inpatient services, the medical provider may rebill the claim as outpatient services. 130 Code Mass. Regs. §415.414(B)(3).
This Court rejects MGH’s argument that the new regulations are impermissibly vague. The new regulations give sufficient definition to the distinction between inpatient and outpatient services and provide seven factors which the Division considers relevant to the determination of medical necessity. Further, the Acute Inpatient Hospital Admission Guidelines provide guidance to medical providers in determining whether the Division is likely to consider inpatient treatment medically unnecessary. The fact that the guidelines are not all-inclusive and allow the Division to exercise some discretion does not render decisions made under them arbitrary. Given that the Division has chosen to determine medical necessity on a case-by-case basis, the regulations could not possibly address all potential clinical situations facing a medical provider. Cf. Brookline v. Commissioner of DEQE, 387 Mass. at 378-79 (regulations governing environmental emissions need not be drawn with undue precision and agency may decide on case-by-case basis whether emissions “cause a nuisance,” are “injurious” or “unreasonably interfere with the comfortable enjoyment of life and properly or the conduct of business”); Custody of a Minor (No. 2), 378 Mass, at 719 (in finding care and protection statute not void for vagueness, court noted that “to require the Legislature to anticipate and codify every parental shortcoming or handicap that might place an exposed child in danger would be to require the impossible”). At the same time, the regulations’ consideration of the member’s medical history, current medical needs, and severity of the signs and symptoms exhibited appropriately focus on individual circumstances. Although additional guidance from the Division would undoubtedly be helpful to medical providers, the regulations at issue do not fail to give fair warning as to what the standards for a payment decision will be.[4] Moreover, the Division’s denial of a claim is subject to several levels of administrative review and ultimately, judicial review under Chapter 30A, thereby preventing arbitrary decisions. Thus, this Court concludes that the Division has provided sufficiently meaningful guidance to medical providers such that the new regulations are not void for vagueness. Cf. Massachusetts Gen. Hosp. v. Brown, Suffolk Super. Ct. Civil Action No. 03-1751G (May 31, 2005) (Billings, J.) (concluding that Division’s new regulations are valid as administered); Massachusetts Hosp. Assoc. v. Warring, Suffolk Super. Ct. Civil Action *716 Nos. 99-2324E, 99-0750C (June 20, 2002) (Sanders, J.) (concluding that new regulations provide sufficient guidance to medical providers). But see Massachusetts Gen. Hosp. v. Commissioner of the Div. of Medical Assistance, Suffolk Super. Ct. Civil Action No. 03-3269 (December 15, 2004) (Burnes, J.) (invalidating new regulations as vague because they fail to give sufficient guidance in determining when a less costly setting should be used).[5]
ORDER
For the foregoing reasons, it is hereby ORDERED that MGH’s motion for judgment on the pleadings be DENIED and that the Division’s June 22, 2004 final decision denying payment to MGH for the inpatient treatment of MM be AFFIRMED. It is further ORDERED that judgment be entered in favor of the Division on Count II of the complaint. It is DECLARED and ADJUDGED that the Division’s Prepayment Review Program is not void for vagueness.

Difflculfy in opening the mouth. See Sloane-Dorland Annotated Medical-Legal Dictionary (1987).

The record simply does not support MGH’s contention that the Division gave undue weight to Dr. Siegal’s testimony. The Hearing Officer stated in his decision that he accorded the testimony of Dr. Hopkins and Dr. Siegal equal weight, because both rendered their opinion based only on an examination of the medical records.

“Observation services” are defined as “outpatient hospital services provided anywhere in an acute inpatient hospital, to evaluate a member’s condition and determine the need for admission to an acute inpatient hospital. Observation services are provided under the order of a physician, consist of the use of a bed and intermittent monitoring by professional licensed clinical staff, and may be provided for more than 24 hours.” 130 Mass. Code. Regs. §415.402.

MGH appears to argue that any guidelines short of a bright-line rule for reimbursement are unacceptably vague. However, in accordance with Massachusetts Eye and Ear Infirmary v. Commissioner of the Div. of Medical Assistance, the Division is not required to proceed through bright-line rules and may properly make decisions on a case-by-case basis. Id., 428 Mass, at 817.

The Division has appealed this decision.