## ADOPTION OF LORNA
(and a companion case[1]).

No. 98-P-191.

Worcester. August 18, 1998. - January 13, 1999.

Present: BROWN, LAURENCE, & SPINA, JJ.

*Parent and Child,* Care and protection of minor, Dispensing with parent's consent to adoption. *Minor,* Care and protection. *Adoption,* Care and protection, Dispensing with parent's consent. *Evidence,* Child custody proceeding. *Practice, Civil,* Findings by judge.

In a combined proceeding for care and protection and to dispense with parental consent to adoption, the evidence was sufficient to support a finding that one child's injuries were the result of abuse [138-139], and the evidence supported the judge's conclusion that the injuries could only have been inflicted by the mother or the father or both [139-141]; the findings supported the judge's conclusion that each parent was unfit [141].

In a combined proceeding for care and protection and to dispense with parental consent to adoption, the judge properly considered evidence of the mother's past parental conduct at a time that was not too remote, which was probative of current unfitness [141-142], and the judge's findings concerning one child's nonaccidental injuries at that prior time were supported by the evidence [142-143].

At a combined proceeding for care and protection and to dispense with parental consent to adoption, there was no merit to the parents' claim that the judge did not consider evidence favorable to them, and the judge's finding that the parents were currently unfit was supported by clear and convincing evidence. [143]

PETITIONS filed in the Gardner Division of the District Court Department on October 26, 1995.

Upon transfer to the special assignment session of the Fitchburg Division of the District Court Department, the cases were heard by *Patrick A. Fox,* J.

*Paul W. Cormier* for the mother.
*Deborah Sirotkin Butler* for the father.
*Jamie Ann Sabino* for the children.

[1]Adoption of Abby, Lorna's younger sister. Both names are fictitious.

*Richard A. Salcedo* for Department of Social Services.

SPINA, J. The parents of Lorna and Abby appeal from decrees of a District Court adjudicating their children in need of care and protection pursuant to G. L. c. 119, § 26, and simultaneously dispensing with the need for their consent to adoption, pursuant to G. L. c. 119, § 26(4), and G. L. c. 210, § 3. They challenge the sufficiency of the evidence and claim that the judge improperly shifted the burden of proof to them to prove their fitness as parents. The children appeal the decrees as to the mother, adopting the arguments made on appeal by her, amplifying some. We affirm.

The following narrative includes facts found by the judge and uncontested evidence supportive of those findings. See *Bruno* v. *Bruno*, 384 Mass. 31, 35-36 (1981); *Matter of Jane A.*, 36 Mass. App. Ct. 236, 240 (1994). Lorna's mother was seventeen and her father was twenty at the time of her birth on May 6, 1991. Her parents had met when the father was stationed at Fort Devens, Massachusetts. He was transferred to Fort Gordon, Georgia, in December, 1990, and remained in contact with the mother. They were engaged at the time of Lorna's birth, but the mother broke off the engagement in August, 1991.

In February, 1992, while in the sole custody of her mother, Lorna suffered fractures of her left shinbone and her left thighbone. She was admitted to a hospital, where her mother told hospital staff that Lorna, then nine months old, had sustained the injuries by pulling a chair onto herself while trying to stand.[2] Hospital staff dismissed the mother's explanation, then filed a report pursuant to G. L. c. 119, § 51A (51A report), of suspected child abuse with the Department of Social Services (department). The discharge diagnosis noted that Lorna was "at risk for neglect or abuse due to social situation." The department conducted an investigation under G. L. c. 119, § 51B, but, having found no other signs of abuse, concluded that the 51A report was unsupported.

The mother later entered a relationship with another man, becoming pregnant and giving birth to a second child, in 1993. In May, 1994, she left her two children unattended to go out dancing with some friends, triggering a new 51A report. She had told investigators that the children were left with a caretaker

---

[2]The judge found that the mother's explanation of Lorna's injuries was "implausible, incredible and inconsistent with the medical diagnosis."

while she went to help a friend move. The department determined that this was untrue and substantiated the report. A care and protection petition was filed, and the department established a service plan for the mother to improve her parenting skills. The mother completed the service program satisfactorily. In the meantime, she renewed her relationship with Lorna's father, marrying him on July 30, 1994. The family then moved to Kansas, where the father was stationed. Shortly thereafter, the care and protection petition was dismissed.

While in Kansas, the mother became pregnant with her third child, Abby. She returned to Massachusetts with her two children in May, 1995, and obtained part-time work. The father joined them in July, 1995, following his honorable discharge from the Army. Abby was born on July 12, 1995. The mother worked at different part-time jobs to support the family because the father was unemployed and not actively seeking work.

On October 21, 1995, the mother left Lorna and Abby with the father while she went grocery shopping. When she returned, she found Abby was in distress and not moving her left arm, and she took the child to a doctor. The doctor diagnosed Abby's condition as nursemaid's elbow and sent them home. The child, however, remained in distress over the next two days, so the mother returned to the doctor on October 23. Abby was admitted to the University of Massachusetts Medical Center (UMMC), where X-rays revealed several recent fractures of her left upper and lower arm and her right shinbone. X-rays also revealed older fractures, including a right shinbone shaft injury and fractures of the left third, fourth, and sixth ribs.

Neither parent offered a plausible explanation for the injuries sustained by three month old Abby, notwithstanding that her only caretakers had been one or both parents. Their explanations were also inconsistent with the medical findings. The father said that he might have injured the child by pulling her out of her walker too abruptly, or was perhaps too rough in the way he dressed her. The mother suggested that four and one-half year old Lorna, limited as she was with a severely deformed hand, may have caused the injuries. Physicians at UMMC concluded that Abby's injuries were not caused accidentally but were the result of physical abuse on more than one occasion. They further concluded that the injuries could not have been caused in the manner offered by either parent. Hospital staff filed a 51A report, which the department determined was supported.

On October 26, 1995, the department filed the care and protection petition which was later consolidated with a petition to dispense with consent to adoption.[3] Abby was discharged from the hospital after one week, at which time she and Lorna were placed in foster care with their maternal grandparents, with whom they currently reside. Following Lorna and Abby's placement, the department entered into a service plan with both parents, including supervised visitation, with a goal of family reunification.

The mother visited the children regularly[4] and was in substantial compliance with her service plan. She, however, declined to present the department with evidence that she had undergone a psychological evaluation before trial, or attended counseling for battered women, as recommended by her service plan. She submitted a psychological evaluation at trial, however, indicating average intellectual skills but weak coping skills. The mother has "a reluctance to see what would be too threatening to acknowledge in her environment," according to that evaluation. The evaluation also indicated that she has limited intellectual skills, lacks maturity, and tends to be impulsive.[5] The mother and father separated in October, 1995, following Abby's admission to the hospital. The separation was precipitated by an argument over Abby's injuries, during which the father threatened the mother. She obtained a restraining order but allowed it to expire. They continued to live apart as of the trial but remain married, and the record is silent as to the intention of either parent to seek a divorce. The mother became involved in a relationship with another man who physically abused her and against whom she obtained a restraining order in 1996. She has a history of involvement in unstable, abusive relationships with men. Although she maintained that Abby was in good health when she left her with her father on October 21, the mother declines to implicate the father as the cause of Abby's injuries because she did not witness him abuse the child. She did express concern, however, that the father spanked the

---

[3]The mother remained the primary caretaker of the middle child until February 15, 1996, when she surrendered custody to the child's father with the department's knowledge. As a result, the petition was dismissed as to that child, and she is not a subject of this appeal.

[4]She also kept vigil at Abby's hospital bed following the child's admission.

[5]While visiting Abby in the hospital, the mother engaged in a physical altercation with another mother, necessitating police intervention.

children frequently and disciplined Lorna by making her sit alone, in quiet, for extended periods of time.

The father visited with the children regularly after the petition was filed, though he did not visit Abby while she was in the hospital, explaining that he had just obtained a new job. He has demonstrated limited parenting skills and has difficulty coping with both children simultaneously. He has a tendency to overlook problems, e.g., injuries to the children, in the interest of keeping his family together. In 1997, Lorna's physicians recommended corrective surgery for a deformity of her hand. The father alone opposed the recommendation, contending that she would be disappointed with the results, and pursued his wishes unsuccessfully in court. The surgery was performed and improved the appearance of the child's hand. A psychological evaluation[6] indicated that the father is impulsive and immature. The father suggested to an investigator that the mother had been aware of Abby's injuries before October 21, but offered no basis for his remark. He declined to testify at trial.

Although both parents complied substantially with their respective service plans, neither demonstrated, either as perpetrator or protector, any insight into the conditions or causes which could have led to Abby's injuries. Without any reasonable explanation for those injuries, there was no indication that either parent would have any ability to avert a reoccurrence of such incidents. In June, 1996, the department changed its goal from reunification to adoption, precisely because neither parent would admit abusing Abby, and thus the department could not determine whether either parent was fit to have custody. The plan calls for adoption by the maternal grandparents, with whom Lorna and Abby have been living, and in whose home they are thriving.

The judge did not determine which parent abused Abby. The judge found that both children "have been abused and neglected as a result of the acts *or omissions of both* parents, that both parents demonstrated a lack of effort to remedy the conditions which created a risk of harm due to abuse and neglect of the children, and that both parents were offered services intended to correct the circumstances which led to the abuse and neglect, but were unable to utilize such services on a regular basis such

---

[6]The evaluator disclaimed any expertise in child psychology and expressly precluded any opinion regarding child custody issues.

that a substantial danger of abuse and neglect continues to exist" (emphasis added).

1. The parents contend that it is unclear whether Abby's injuries were brought about by abuse or by accidental means, and consequently the evidence is insufficient to support a finding that they are not fit. They rely upon *Adoption of Iris*, 43 Mass. App. Ct. 95 (1997), *S.C.*, 427 Mass. 582 (1998). The medical evidence in *Iris* was limited to medical records which expressly indicated that the child's single unexplained head injury was equally consistent with trauma resulting from accidental means as from abuse. *Id.* at 105-106. Here, by contrast, the unchallenged medical records indicate hospital staff specifically ruled out accidental means and concluded that abuse was the cause of Abby's multiple injuries. Physicians rejected a diagnosis of accident because Abby was only three months old, her injuries were the result of more than one incident, and the injuries were "extremely serious and alarming." In contrast to *Iris*, *supra*, the evidence here is sufficient to support a finding of abuse and is not clearly erroneous. See *Care and Protection of Laura*, 414 Mass. 788, 793 (1993).

2. The parents next contend that the evidence did not identify the perpetrator and that the judge improperly shifted to them the burden of proving their own fitness by finding that they failed "to assume any personal responsibility for [Abby's] injuries." See *Adoption of Iris*, *supra* at 96. The burden is on the department in proceedings to dispense with parental consent to adoption to prove current parental unfitness by clear and convincing evidence. *Santosky* v. *Kramer*, 455 U.S. 745, 769 (1982). *Petition of the Dept. of Social Servs. to Dispense with Consent to Adoption*, 392 Mass. 696, 698 (1984). That burden never shifts to the parents. See *Petitions of the Dept. of Social Servs. to Dispense with Consent to Adoption*, 389 Mass. 793, 802-803 (1983).

In *Iris*, the precise time that the four week old child sustained her head injury could not be determined for purposes of identifying which of her five caretakers, including her parents, had been with her at the time of injury. 43 Mass. App. Ct. at 102-103. Where the injury was truly unexplained and the parents had no history of abuse or neglect, their inability to explain the injury was entirely consistent with the cause of the injury being an accident. *Id.* at 104-105. Here, Abby's older and recent injuries

were not unexplained, and the only persons who could have inflicted those injuries were the mother or the father, or both. The evidence surrounding the left arm injury strongly implicated the father: the approximate time of injury; his admissions about being rough with the child; the mother's unchallenged testimony that the child was fine when left with the father; and the permissible inference which the judge drew from the father's failure to testify, see *Custody of Two Minors*, 396 Mass. 610, 616-617 (1986). The question of the older injuries, however, remained open as to both parents.

More important, the judge's findings of abuse were not limited to whether either parent was the perpetrator of the abuse. While at least one had to have abused Abby, both were deemed unfit for their inability to protect the children from future abuse. See *Adoption of Mary*, 414 Mass. 705, 711 (1993).

With respect to the mother (assuming she did not abuse the child), her refusal to consider that the father injured Abby, based simply on a claim that she did not see him hit her, having said that she left the child with him uninjured, and her readiness to accuse, without witnessing, four year old Lorna of causing Abby's injuries, underscores her inability to protect her children. This conclusion is all the more compelling when viewed in light of her inability to shield herself from abusive men[7] and her inability to assimilate and to deal appropriately with her observations about the father's excessive corporal discipline of the children.[8] Attending to a child's injuries and expressing concern are not enough. The mother's refusal to accept

---

[7]The children take issue with the judge's finding regarding the mother's history of abusive and unstable relationships with men. Their argument relies upon the lack of evidence of serious injury to the mother. Abusive and unstable relationships take many forms and are not limited to extreme cases. Here, the mother obtained restraining orders against two men after being threatened with physical violence. Her relationships were relatively short-lived, or on-again/off-again, as with the father, and the men were unsupportive of her needs. The mother's psychological evaluation indicated she was reluctant to acknowledge threatening situations and that she was unaware of the harm the father was inflicting on the children. A judge's findings are entitled to deference and will not be disturbed unless clearly erroneous. See *Custody of Eleanor*, 414 Mass. 795, 799 (1993). There was no error.

[8]The children challenge the judge's finding that the mother possesses "limited intellectual skills." While they correctly point out that the only evidence in this regard is found in the mother's psychological evaluation, which describes her as having average intellectual skills, the judge's finding must be read in context. The judge found that the mother "is a young woman of limited intellectual skills who has allowed herself to become involved in a

responsibility for failing to recognize and avoid circumstances having high potential to jeopardize the safety and well-being of her children is the denial of responsibility about which the judge spoke.

A similar result obtains for the father. While the evidence strongly suggests that the father abused Abby at least once, the evidence also supports the judge's finding that he, too, lacks the ability to protect the children, whether it be from the misdeeds of others, or his own. Even if he did not inflict any of Abby's injuries, he never recognized that she had been injured seriously.

The judge did not find both parents unfit because, as the parents contend, he could not determine which one was the abuser and neither was willing to confess. It was not necessary to sort out the identity of the actual abuser for each incident of abuse. Both lacked the ability to protect the children: one, unable to protect them from his (or her) own abuse; and the other, unable to protect them from the abuser. He found both parents unfit because both remain unable to recognize abuse and confront it preventively. The case against each parent rested on independent footing, and there was no burden shifting.

3. The mother contends that the judge erred by considering evidence of her past parental conduct. Her argument is two-pronged: (1) the department determined that the 51A report of the 1992 incident was unsupported; and (2) the evidence did not fall within a "pattern of ongoing, repeated, serious parental neglect, abuse, and misconduct." *Adoption of Diane*, 400 Mass. 196, 204 (1987).

The mother cites no authority for the proposition that evidence regarding an incident which was the subject of an *unsupported* 51A report may not be offered as evidence of current parental unfitness. The department did not conclude in 1992 that the mother did not cause Lorna's injuries. It determined that the 51A report was unsupported because of the absence of other signs of abuse. Further, that determination was made under the investigatory function of the department, pursuant to G. L. c. 119, § 51B, and was not a final judgment following an adjudicatory proceeding. Consequently, the use of such evidence was not precluded by principles of collateral estoppel. See *Fay* v. *Federal Natl. Mort. Assn.*, 419 Mass. 782, 790 (1995).

series of unstable, sometimes abusive relationships with male companions." Her psychological evaluation indicates weak coping skills and a reluctance to acknowledge threatening circumstances. The judge's finding was supported fairly by the evidence.

Lorna's 1992 injuries were not so remote as to preclude their admissibility. Taken in context with the mother's documented neglect in 1994, and Abby's injuries of 1995, they establish a "pattern of ongoing, repeated, serious parental neglect, abuse, and misconduct" probative of the mother's current unfitness. See *Adoption of Diane, supra.* When viewed with the evidence of the mother's lack of maturity, weak coping skills, and impulsivity, the judge was warranted in concluding, by clear and convincing evidence, that the mother was currently unfit. The evidence was also admissible for its prognostic value on the question of the mother's future fitness. See *Custody of Two Minors*, 396 Mass. at 621. "Parental unfitness must be determined by taking into consideration a parent's character, temperament, conduct, and capacity to provide for the child in the same context with the child's particular needs, affections, and age." *Adoption of Mary*, 414 Mass. at 711. There was no error.

4. The children argue that the judge's findings concerning Lorna's 1992 injuries are not supported by the evidence. In particular, they contend that no diagnosis of child abuse or intentional child abuse was ever made. Relying on a statement in Lorna's medical records, which they claim is unrebutted, that Lorna's injuries could be consistent with the mother's account, they further argue that the evidence does not support the judge's finding that the "mother's explanation for these injuries was implausible, incredible and inconsistent with the medical diagnosis."

The discharge diagnosis indicated that Lorna was "at risk for neglect or abuse." The child's physician reported to the court appointed investigator that Lorna's injuries *were* the result of abuse. It is immaterial that no one opined that the abuse was intentional. It is sufficient that they were deemed not accidental. See *Adoption of Iris*, 43 Mass. App. Ct. at 103.

The note in the records to the effect that Lorna's injuries could be accidental was undated and made by an unidentified person. It also indicates that the matter would be investigated further and that the injury could be consistent with a different diagnosis. The hospital eventually filed a 51A report, and the coordinator of the hospital child advocacy team reported to the court appointed investigator that Lorna's injuries were inconsistent with the mother's explanation of the injuries. As noted, Lorna's physician thought the injuries were the result of

abuse. The judge was free to accept the evidence of the coordinator and Lorna's physician, and the discharge diagnosis. The mother testified about her explanation of Lorna's injuries, and the judge was in a position to assess her credibility, a vantage we do not have. There is nothing in the record to indicate that he was clearly wrong in rejecting her testimony. See *Custody of Eleanor*, 414 Mass. 795, 799 (1993). There was no error.

5. The parents contend that the judge ignored certain evidence favorable to them, *Adoption of Stuart*, 39 Mass. App. Ct. 380, 391 (1995), in particular, their recent substantial compliance with their service plans. The judge did not ignore that evidence, and indeed acknowledged that compliance. His appreciation for their effort, however, was overshadowed by his conclusion that "both parents were offered services intended to correct the circumstances which led to the abuse . . . but were unable to utilize such services . . . such that a substantial danger of abuse or neglect continues to exist." The judge was not obliged to believe that the parenting skills of the mother or the father had improved simply because of their recent cooperation with the department, or that their good intentions eliminated risk of future abuse. See *Care and Protection of Martha*, 407 Mass. 319, 328 (1990). The judge's finding will not be disturbed unless clearly erroneous. *Adoption of Mary*, 414 Mass. at 710. That neither parent "had achieved the essential gains in . . . parenting skills" has support in the record. See *Adoption of Paula*, 420 Mass. 716, 730 (1995).

We conclude that there was clear and convincing evidence that the mother and the father are "currently unfit to provide for the welfare and best interests of their children." *Adoption of Quentin*, 424 Mass. 882, 886 (1997).

*Decrees affirmed.*