NOTICE:  Summary decisions issued by the Appeals Court pursuant to M.A.C. Rule 23.0, as appearing in 97 Mass. App. Ct. 1017 (2020) (formerly known as rule 1:28, as amended by 73 Mass. App. Ct. 1001 [2009]), are primarily directed to the parties and, therefore, may not fully address the facts of the case or the panel's decisional rationale.  Moreover, such decisions are not circulated to the entire court and, therefore, represent only the views of the panel that decided the case.  A summary decision pursuant to rule 23.0 or rule 1:28 issued after February 25, 2008, may be cited for its persuasive value but, because of the limitations noted above, not as binding precedent.  See Chace v. Curran, 71 Mass. App. Ct. 258, 260 n.4 (2008).

COMMONWEALTH OF MASSACHUSETTS

APPEALS COURT

22-P-722

ADOPTION OF YOLANDA.[1]

MEMORANDUM AND ORDER PURSUANT TO RULE 23.0

The mother appeals from a decree of the Juvenile Court finding her unfit to parent her child, Yolanda; terminating her parental rights as to Yolanda; and approving the adoption plan proposed by the Department of Children and Families (DCF or department).[2]  We affirm.

Background.  Yolanda was born in August 2013.  On May 11, 2017, DCF filed the instant care and protection petition and obtained emergency custody of Yolanda based on concerns regarding domestic violence between the mother and father in Yolanda's presence, the mother's substance use, and the mother's untreated mental health issues.  A seventeen-day trial regarding the termination of the mother's parental rights was held between August 16, 2021, and October 28, 2021, during which the judge

_____

[1] A pseudonym.
[2] The child's father did not appeal from the earlier termination of his parental rights and is not a party to this appeal.

admitted eighty-three exhibits[3] and heard testimony from eight witnesses, including the mother.[4]  On November 22, 2021, the judge found the mother unfit to parent Yolanda, adjudicated Yolanda in need of care and protection, terminated the mother's parental rights, dispensed with the need for parental consent to adoption, approved DCF's proposed adoption plan for Yolanda to be placed with her foster mother, and ordered four posttermination visits per year.  The mother's appeal followed.

Discussion.  "To terminate parental rights to a child and to dispense with parental consent to adoption, a judge must find by clear and convincing evidence, based on subsidiary findings proved by at least a fair preponderance of evidence, that the parent is unfit to care for the child and that termination is in the child's best interests" (citation omitted).  Adoption of Yalena, 100 Mass. App. Ct. 542, 549 (2021).  When determining whether to take the "extreme step of terminating the parent and child's legal relationship . . . it is appropriate for a judge to consider whether, on the basis of credible evidence, there is a reasonable likelihood that the parent's unfitness at the time of trial may be only temporary" (quotations and citations omitted).  Care & Protection of Zeb, 489 Mass. 783, 788 (2022).

---

[3] One exhibit was withdrawn and two others were stricken during the trial.

[4] The mother did not appear for trial on three dates due to migraines.

"We give substantial deference to a judge's decision that termination of a parent's rights is in the best interest of the child, and reverse only where the findings of fact are clearly erroneous or where there is a clear error of law or abuse of discretion." Adoption of Ilona, 459 Mass. 53, 59 (2011). When reviewing such determinations, "the judge's assessment of the weight of the evidence and the credibility of the witnesses is entitled to deference." Custody of Eleanor, 414 Mass. 795, 799 (1993).

The mother argues that the evidence did not clearly and convincingly support the judge's finding that she is unfit to parent Yolanda. Specifically, she contends that the judge erroneously (1) based her determination of unfitness on DCF's general concerns regarding her compliance with and benefit received from services, and (2) relied on past circumstances and speculation, failing to account for the mother's "recent positive gains."[5] Adoption of Paula, 420 Mass. 716, 731 (1995). We disagree.

---

[5] The mother also challenges the judge's subsidiary findings of fact nos. 128 through 138 regarding her failure to consistently and timely provide signed releases to DCF. While the mother provided limited releases at certain points throughout the pendency of this case, the record demonstrates that the mother repeatedly failed to provide timely, full releases with respect to her treatment and hospitalization upon DCF's request. See Adoption of Larry, 434 Mass. 456, 462 (2001) (finding is clearly erroneous where "there is no evidence to support it," or reviewing court "is left with the definite and firm conviction

The judge made extensive findings[6] supporting her conclusion that the mother was unfit by clear and convincing evidence. The record supports the judge's findings that, inter alia: the mother has a history of abusive relationships and substance misuse; she has repeatedly failed to acknowledge her own substance use and the harm to Yolanda caused by exposure to domestic violence; she has not consistently engaged with required services or provided timely, full releases to the department; her economic situation is unstable; she has failed to meaningfully address her own physical and mental health issues; she has not been forthcoming to her providers or the department about her mental health; and she has had issues with confirming visits, arriving on time, and having inappropriate conversations with Yolanda wherein she has invalidated Yolanda's exposure to domestic violence. Furthermore, the judge properly considered the required factors set forth in G. L. c. 210, § 3 (c), and found factors (ii), (iii), (iv), (vi), (vii), (viii), (x), and (xii) applicable to her determination that the

---

that a mistake has been committed" [citation omitted]); Adoption of Yalena, 100 Mass. App. Ct. at 547 n.10. "[T]he judge's assessment of the weight of the evidence and the credibility of the witnesses is entitled to deference." Custody of Two Minors, 396 Mass. 610, 618 (1986).

[6] The judge made 406 findings of fact and forty-six conclusions of law that "are both specific and detailed, demonstrating, as we require, that close attention was given to the evidence." Adoption of Don, 435 Mass. 158, 165 (2001).

4

mother was unfit. We discern no clear error in the judge's finding that the mother is unfit to parent Yolanda, a finding that is supported by clear and convincing evidence.

There is no merit to the mother's argument that the judge erroneously based her unfitness determination on DCF's general concerns regarding the mother's compliance with and benefit received from services. It is clear from the judge's thoughtful and comprehensive findings that her determination of unfitness was based on a "constellation of factors." Adoption of Greta, 431 Mass. 577, 588 (2000). Furthermore, the record supports the judge's determination that while the mother participated in some services, she did not gain "sufficient insight into how those services impact her daily life or have changed her parental abilities."[7] Despite her participation in domestic violence programs, for example, the mother has continually minimized the extent of the abuse she suffered, failed to maintain a restraining order against the father, and invalidated Yolanda's

---

[7] The judge stated in her conclusions of law that "[e]ven when parents substantially comply with service plans, they may still be found unfit if they do not demonstrate that they have benefitted from the services provided." To be clear, the burden to prove current parental unfitness by clear and convincing evidence is on the department, and "[t]hat burden never shifts to the parents." Adoption of Lorna, 46 Mass. App. Ct. 134, 139 (1999). Notwithstanding the judge's use of the word "demonstrate," we discern no clear error or abuse of discretion where there was evidence in the record to support the judge's determination that the mother did not sufficiently "benefit from services aimed at remediating her parenting deficits."

5

exposure to domestic violence during visitation.  See Adoption

of Paula, 420 Mass. at 730 (mother's participation in services

"had not appreciably improved her capacity to 'meet the complex

emotional and physical needs of her children'").

Contrary to the mother's assertion, the judge did consider

the mother's "recent positive gains."  Adoption of Paula, 420

Mass. at 731.  The judge acknowledged, for example, that the

mother has lived in the same apartment for the last three years,

she has not had reported contact with the father since 2019, and

she has been more consistent with participation in services

since March of 2020.  However, "the judge was entitled to

consider the evidence of her recent improvements within the

context of her earlier and continuing deficits."  Adoption of

Jacques, 82 Mass. App. Ct. 601, 608 (2012).  See Custody of Two

Minors, 396 Mass. 610, 621 (1986) (judge may properly consider

"prognostic evidence derived from prior patterns of parental

neglect or misconduct in determining future fitness and the

likelihood of harm to the child").  "Based on the judge's

findings in this instance, it is apparent that the mother's

gains were offset by continuing deficits, many of which were

highlighted by the mother's lack of credibility on a number of

fronts."[8]  Adoption of Jacques, supra.

---

[8] The judge found the mother to be not credible with respect to
her testimony that she, inter alia:  has not been in a

6

Throughout the pendency of this case, Yolanda has had seventeen different placements due in large part to her specialized needs associated with her posttraumatic stress disorder and "high-risk behaviors" including self-harm, aggression toward people and animals, and lying. Since moving in with her preadoptive mother in March 2019 and engaging in therapeutic services, however, Yolanda's behavior and ability to express herself verbally have improved significantly. The record supports the judge's finding that the preadoptive mother has provided a safe, stable environment for Yolanda and the two have developed a strong bond such that removal "would likely cause serious psychological harm" to Yolanda. G. L. c. 210, § 3 (c) (vii). See Adoption of Astrid, 45 Mass. App. Ct. 538, 545 (1998). That the mother is unable to identify Yolanda's behavioral needs and has not been forthcoming about nor consistently engaged in services to address her own trauma and mental health issues further supports the judge's determination that the mother is not equipped to care for Yolanda's ongoing

relationship with the father since 2013 and has not had contact with him since 2017; was not involved in the incident in January of 2019 wherein she and the father broke into the father's girlfriend's home and assaulted her; forgot to renew her restraining order against the father; has been taking her medications regularly since October 2020; only used cocaine on one occasion; completed substance abuse treatment in 2018 and 2019; and was honest to her providers regarding her psychiatric hospitalization in 2020.

7

specialized needs.  See Adoption of Jacques, 82 Mass. App. Ct. at 608-609.

We are likewise not persuaded by the mother's assertion that the judge abused her discretion by terminating the mother's parental rights without allowing the mother to demonstrate that her unfitness, if any, was temporary.  The mother points to her work with a family support clinician from 2020 to 2021, and maintains that she demonstrated improved parenting skills during visitation in 2021.  However, as recently as May 2021, the mother engaged in inappropriate conversations with Yolanda during visitation including, inter alia, telling Yolanda that if she were adopted, she would never see the mother again. Moreover, the record supports the judge's finding that it would take years of consistent therapeutic treatment to address the mother's psychological issues stemming from her trauma-related stress and anxiety disorders that limit her ability to parent Yolanda, who has specialized behavioral and educational needs that the mother is not equipped to address.  Accordingly, "while we appreciate that the mother has made commendable efforts and has shown concern and affection for [Yolanda]," we discern no clear error nor abuse of discretion in the judge's determination that the mother is unfit,[9] her unfitness is not merely a

_____

[9] We note that "[d]espite the moral overtones of the statutory term 'unfit,' the judge's decision was not a moral judgment or a

8

temporary condition, and that termination of the mother's parental rights is in Yolanda's best interests.  Adoption of Jacques, 82 Mass. App. Ct. at 609.

Decree affirmed.

By the Court (Neyman, Sacks & Hodgens, JJ.[10]),

*Joseph F. Stanton*

Clerk

Entered:  May 15, 2023.

---

determination that the mother . . . [does] not love the child" (quotations and citation omitted).  Adoption of Bea, 97 Mass. App. Ct. 416, 417 n.2 (2020).

[10] The panelists are listed in order of seniority.