NOTICE:  Summary decisions issued by the Appeals Court pursuant to M.A.C. Rule 23.0, as appearing in 97 Mass. App. Ct. 1017 (2020) (formerly known as rule 1:28, as amended by 73 Mass. App. Ct. 1001 [2009]), are primarily directed to the parties and, therefore, may not fully address the facts of the case or the panel's decisional rationale.  Moreover, such decisions are not circulated to the entire court and, therefore, represent only the views of the panel that decided the case. A summary decision pursuant to rule 23.0 or rule 1:28 issued after February 25, 2008, may be cited for its persuasive value but, because of the limitations noted above, not as binding precedent.  See Chace v. Curran, 71 Mass. App. Ct. 258, 260 n.4 (2008).

COMMONWEALTH OF MASSACHUSETTS

APPEALS COURT

24-P-553

CARE AND PROTECTION OF VERENA.[1]


MEMORANDUM AND ORDER PURSUANT TO RULE 23.0

Following a trial on October 31, 2023, and the father's stipulation to unfitness, a Juvenile Court judge adjudicated the mother unfit to parent Verena, awarded permanent custody of the child to the Department of Children and Families (department), but did not terminate the mother's parental rights to the child. The mother appeals, arguing that the judge made erroneous subsidiary findings and ignored evidence favoring the mother. We affirm.

Background.  The child, age thirteen at the time of the trial, has been diagnosed with behavioral dysregulation, posttraumatic stress disorder (PTSD) and aggression, and has a history of self-harm and making suicidal statements.  A team of

_____

[1] A pseudonym.

psychiatric professionals (including a psychiatrist, therapist, and intensive care coordinator) provides care to the child. Since 2016, the mother has been psychiatrically hospitalized at least six times. By the time of trial, the mother, forty-five years old, suffered from bipolar disorder, depression, anxiety, and PTSD. She complied with treatment and prescribed medications.

The department's most recent involvement began in August 2019, after receiving the first in a series of reports pursuant to G. L. c. 119, § 51A (51A report), alleging the neglect of the then nine year old child by the mother. On that date, both the mother and the child were admitted to the hospital for mental health treatment. While the mother remained hospitalized and unable to care for the child, the department substantiated the allegation of neglect, and the child, upon discharge from the hospital, temporarily resided at a home for children. In July 2020, while the mother and the child resided alone together, the department received, and later substantiated, 51A reports alleging the neglect of the child when the mother repeatedly became intoxicated while taking her prescription medication. Two months later, in September 2020, another substantiated 51A report alleged that the mother left the child home alone against

2

professional advice given the child's history of self-harming ideations and hiding knives in her bedroom.

In October 2020, the child had to be hospitalized after exhibiting dysregulated behaviors, screaming, and being inconsolable, and the mother had to be psychiatrically hospitalized approximately two weeks later. On November 5, 2020, the department filed a care and protection petition pursuant to G. L. c. 119, § 24, and the department obtained temporary custody of the child. The child's course of treatment included court-authorized antipsychotic medication over the next two years. By March 2021, the child transitioned to a foster home.

In August 2022, the child (then twelve years old) was briefly reunified with the mother. The next month, the mother took the child and the child's friend (also a minor) to an adult party where the mother provided the child and her friend with alcohol and left them alone while she went outside to smoke marijuana and cigarettes and drink beer. While the mother was outside, an adult male sexually assaulted the child and the child's friend in a bedroom. After Boston police officers responded, the mother helped the suspect flee. Officers found the mother, the child, and the child's friend to be heavily intoxicated. Medical personnel transported all three to the

3

hospital, where they presented as heavily intoxicated. The mother told a social worker that she did not want to report the perpetrator to the police because she "wanted to avoid this." She also acknowledged that it was not appropriate to provide alcohol to minors, but she admitted doing so at the party and admitted to "sometimes" drinking alcohol with the child when they "share a . . . bottle." Following this sexual assault, the child has remained in the department's care.

At trial, which was held on October 31, 2023, the department sought permanent custody of the child, but did not seek to terminate the mother's parental rights. On November 7, 2023, the judge adjudicated the child in need of care and protection, found the mother unfit, and placed the child in the permanent custody of the department.

Discussion. "Parental unfitness is determined by considering a parent's character, temperament, conduct, and capacity to provide for the child's particular needs, affections, and age." Adoption of Anton, 72 Mass. App. Ct. 667, 673 (2008). In care and protection cases, the judge's subsidiary findings must be proved by a preponderance of the evidence and will only be disturbed if clearly erroneous. See Custody of Eleanor, 414 Mass. 795, 799 (1993); Care & Protection of Laura, 414 Mass. 788, 793 (1993). "Taken together, these

4

findings must then prove clearly and convincingly that the parent[] [is] currently unfit to provide for the welfare and best interests of the[] child[]." Adoption of Quentin, 424 Mass. 882, 886 (1997). "[D]issatisfaction with the judge's weighing of the evidence" is not a sufficient basis to warrant relief on appeal. Id. at 886 n.3. The department bears a "heavy" burden to prove unfitness. Care & Protection of Elaine, 54 Mass. App. Ct. 266, 271 (2002).

We disagree with the mother's contention that the department failed to demonstrate by clear and convincing evidence that she was unfit. She notes that she has been compliant with her mental health providers and treatment plan and that she has maintained the same housing for three years. She emphasizes that not only has she been consistent in visiting with the child, but she has demonstrated that she has the ability to care for the child and to help the child "with her behaviors."

In a comprehensive decision, the judge recognized that the mother "clearly cares for her child" and had been "compliant with her [own] mental health providers and treatment plan," but lacked any "insight into [the child's] needs," including her "significant mental health needs." This conclusion is well supported by the record. Over the course of many years, the

5

mother suffered from her own mental health needs that resulted in repeated psychiatric hospitalizations and unavailability to care for the child. The child also suffered from psychiatric conditions including behavioral dysregulation, PTSD, aggression, self-harming, and suicidal ideation, and she required a team of psychiatric professionals for her care. When the mother was physically available for the child, supervision proved woefully inadequate and jeopardized the child's safety. On one occasion, against professional advice, the mother left the child home alone after the child had hidden knives in her bedroom the week before. On a later occasion, with the care and protection petition pending, the mother provided alcohol to the child, left her alone at an adult party where the child was intoxicated, and helped the person who sexually assaulted the child at the party flee from the police. While the mother's compliance with her own mental health treatment at the time of trial is certainly laudable, these incidents illustrate that mere compliance did not endow the mother with an insight into the particular needs of the child. See Adoption of Ulrich, 94 Mass. App. Ct. 668, 677 (2019) ("mere participation in . . . services does not render a parent fit 'without evidence of appreciable improvement in [their] ability to meet the needs of the child'" [citation omitted]); Adoption of Dora, 52 Mass. App. Ct. 472, 478 (2001)

6

(unfitness where parent failed to heed medical advice for child); Adoption of Oliver, 28 Mass. App. Ct. 620, 625 (1990) (unfitness where parent showed no understanding of child's medical needs). Thus, "the judge did not abuse [her] discretion or commit a clear error of law in determining that the mother was unfit." Adoption of Luc, 484 Mass. 139, 147 (2020).

Contrary to the mother's contention, we discern no clear error in the judge's factual finding that the mother lacked "insight" into the child's needs, the severity of the child's mental health needs, and the necessity of "provid[ing] for her safety." As previously discussed, the record contains ample evidence of the mother's lack of insight in all of these areas despite the strides the mother made in her own mental health care. Her trial testimony showed that she continued to lack insight into the needs of the child: when asked to identify the child's diagnosis, she testified, "stress postpartum"; when asked her plan if the child returned home, the mother testified that she would like to visit the Dominican Republic; and when asked specifically about plans for the child's needs and safety, the mother testified that her plans would be the same as they were in September 2022 (when the sexual assault occurred). The mother also testified that she remained in a relationship with a boyfriend despite knowing the child reported that he tried to

7

kiss her.  This evidence showed a persistent lack of insight into the child's needs.  The mother's alternative view of the facts on appeal amounts to "no more than a disagreement with the judge's weighing of the evidence and credibility determinations regarding witnesses."  Adoption of Don, 435 Mass. 158, 166 (2001).

We also do not read two notations in the family assessment from July 2023 as being dispositive on the issue of the mother's insight into the needs of the child.  One notation indicated that the mother "understands and responds to her child's emotional needs by engaging in child's meetings and being present for every supervise[d] visit."  Another notation indicated that the mother sometimes "model[s] empathy."  The mother contends that these notations and the absence of any reference to these notations by the judge show that the judge erred.  The judge, however, was not required to credit this assessment or to assume that such observations by the social workers carried greater weight than incidents of neglect that evidenced a complete lack of insight into the most basic safety and mental health needs of the child.  See Adoption of Larry, 434 Mass. 456, 467-468 (2001) (unfitness where parent failed to protect child against actions of abuser); Adoption of Lorna, 46 Mass. App. Ct. 134, 141 (1999) (unfitness where parent failed to

protect child).  The judge had the obligation to evaluate the credibility of the evidence, including the mother's testimony, and to make her findings of fact accordingly.  See Custody of Eleanor, 414 Mass. at 800.  We similarly reject the suggestion that the judge had an obligation to summarize every piece of evidence that favored the mother's viewpoint.  See Adoption of Franklin, 99 Mass. App. Ct. 787, 799 (2021) (findings do not require acknowledgement and highlighting of all positive factors to be sufficiently fair and balanced); Adoption of Jacques, 82 Mass. App. Ct. 601, 608 (2012) ("judge was entitled to consider the evidence of [the mother's] recent improvements within the context of her earlier and continuing deficits"); Care & Protection of Olga, 57 Mass. App. Ct. 821, 823 (2003), quoting Adoption of Harriet, 29 Mass. App. Ct. 111, 112 (1990) (judge need not specifically cite every piece of evidence so long as decision reflected "careful factual inspection" of evidence as whole).

We disagree with the mother's contention that the evidence failed to establish a nexus between her mental health issues and her ability to parent.  The mother's mental health is "relevant only to the extent that it affects the parent['s] capacity to assume parental responsibility, and ability to deal with a child's special needs."  Adoption of Frederick, 405 Mass. 1, 9

(1989).  Here, the mother's fitness did not turn on the mother's particular diagnoses; rather multiple commitments to psychiatric facilities rendered her unavailable to care for the child.  See Adoption of Serge, 52 Mass. App. Ct. 1, 8 (2001) (mother unfit where she was physically unavailable to serve as child's caretaker for substantial periods of child's life).  Because the mother's psychiatric hospitalizations rendered her unavailable to care for her child, the evidence established the requisite nexus.  See Adoption of Frederick, supra.

Finally, the record does not support the mother's claim that the judge erroneously found she had been diagnosed with anxiety and PTSD.  Our review of the record indicates that a report of the court investigator noted the mother had been "diagnosed with PTSD, depression, anxiety, and bipolar disorder."  This notation is sufficient evidence to support the judge's finding that the mother was diagnosed with anxiety and PTSD.  Even if the judge erred, which we do not conclude, "there was no resulting prejudice."  Adoption of Luc, 484 Mass. at 148.  As previously discussed, the record shows the mother suffered

10

from several other psychiatric conditions that rendered her unable to care for the child.  Thus, there was no error and no prejudice.

<u>Judgment affirmed</u>.

By the Court (Desmond, Grant & Hodgens, JJ.[2]),

Clerk

Entered:  March 25, 2025.

---

[2] The panelists are listed in order of seniority.